**ASHBY, County Judge, et al. v. JAMES et al. (No. 1743.)**

(Court of Civil Appeals of Texas. Amarillo. Dec. 15, 1920. Rehearing Denied Jan. 5, 1921.)

**1. Counties ⚖117—Contract on cost plus basis held illegal under notice for bids.**

Where the notice for bids to erect a county courthouse called for bids for the erection in accordance with plans and specifications on file, a contract with a bidder on the cost plus basis, whereby the contractor was not to be liable for the material and labor furnished, but was merely to supervise the construction and receive compensation for such supervision, is illegal, as made without the notice required by Vernon's Ann. Civ. St. Supp. 1918, §§ 2268a, 2268b.

**2. Injunction ⚖163(2)—Temporary injunction against contract with architect and for courthouse site made without competition not dissolved.**

Since the statute requiring competitive bidding for all county contracts exceeding $2,000 does not except contracts for the services of an architect or for the purchase of a site for a county courthouse, a temporary injunction, restraining the enforcement of such contracts, made without competitive bids, will not be dissolved, though it might be determined on final hearing that the nature of those contracts created an implied exception from the statutory requirements.

**3. Counties ⚖116—Contract to pay in daily installments held not a contract to be paid for by the day.**

A contract between a county and a contractor, whereby the latter was to supervise the construction of a county courthouse, and to receive a stipulated sum payable in daily installments, is not within the exception to the requirement of competitive bids for county contracts of work done under the direct supervision of the county commissioners and paid for by the day.

**4. Counties ⚖196(3) — Warrants issued for courthouse held not "negotiable instruments," so that issuance to pay invalid contract could be enjoined.**

Warrants may be issued by a county to pay for a county courthouse, but they are not negotiable paper, and are only evidence of the debt owing by the county, so that their issuance can be enjoined at the suit of a taxpayer, where the contract in payment for which they were to be issued was invalid.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Negotiable Instrument.]

**5. Counties ⚖165—Warrants held void because issued without indebtedness.**

Warrants which county commissioners proposed to issue and deliver to contractors to pay for work and materials in the construction of a courthouse are void, where the contract for the contractor's services was illegal, and the materials and labor had not been purchased or performed so as to create a debt against the county.

**6. Counties ⚖164—Cannot borrow money by issuing warrants.**

Counties cannot borrow money to erect a courthouse by issuing warrants and selling them in advance of contracting legal indebtedness for the courthouse, but can borrow the money only by issuing bonds with the approval of the taxpayers.

Appeal from District Court, Dallam County; Henry S. Bishop, Judge.

Suit by A. M. James and others, as taxpayers, against Lawrence Ashby, as County Judge, and others, to restrain the execution

---

of contracts for the erection of a courthouse and the issuance of county warrants therefor. From an order overruling the motion to dissolve the temporary injunction, defendants appeal. Affirmed.

Bailey & Richards and Tatum & Strong, all of Dalhart, for appellants.

R. E. Stalcup, of Dalhart, and Kimbrough, Underwood, Jackson & Simpson, of Amarillo, for appellees.

HUFF, C. J. This is an appeal from an order overruling the motion of appellants to dissolve a temporary injunction. The appellees, James and others, taxpayers of Dallam county, presented their petition, praying for a restraining order against Lawrence Ashby, county judge, and the county commissioners, the tax assessor, and tax collector of Dallam county, and certain other parties purporting to have entered into certain contracts with the commissioners' court, concerning the erection of a courthouse, and the issuance of certain bonds to obtain money for such purposes under a subterfuge of county warrants. It is impossible within reasonable limits, to present the various issues pleaded by the parties. We will try to set up as briefly as we may the facts alleged and considered established on the hearing in chambers by the judge. On the 8th of December, 1919, at a regular term of the county commissioners' court of Dallam county, the court entered an order, to the effect, upon motion duly made and seconded, that Dallam county build a courthouse, as provided by the statute, giving the county commissioners authority to build said courthouse, and issue warrants for same, without a vote of the people, said warrants to be issued for the amount and rate of interest thereafter to be decided by the court and the site for the courthouse thereafter to be selected. The order recites that the motion was duly carried, all members of the court being present, and voting in the affirmative. The commissioners' court entered into communication with architects, and among them the firm of Mann & Gerow, which firm submitted pencil sketches, etc., and about March 8, 1920, the court adopted the plans and specifications of said firm, and entered an order of that date, to the effect that the plans and specifications furnished by Mann & Gerow be adopted and approved. The order also directed that the county judge advertise for bids as required by law for the construction of a courthouse, as per plans and specifications adopted, the bids to be opened April 12, 1920; that the bids be taken separately on general contract, heating and plumbing contract and electric wiring contract. However, it appears that a contract, dated November 11, 1919, had been executed by the county through its commissioners' court, who signed it as such individually with Mann & Gerow. By the terms of this contract the county agreed to pay a sum equal to 5 per cent. of the cost of the building, 3 per cent. on the date of letting the contract for construction, and the remainder as the building progressed. The architects were obligated to keep and furnish a competent superintendent on the building during construction. By this contract the architects were to draw plans at once to enable the commissioners to know the amount of money to raise. This contract was ratified July 13, 1920, by the parties thereto, also modifying the provision as to the time of payment, in which it was stipulated $4,000 was to be paid in county warrants upon the execution of the supplemental contract, $2,000 due and payable April 17, 1922, with interest at 6 per cent. There are some other details perhaps not necessary to notice. There was no order to advertise for bids for plans and specifications or for a superintending architect, and no notice for competitive bids, and none were received from architects. It appears that the $4,000 has been paid the architect.

The notice for bids for contract on the plans and specifications was given by the county judge, as required by the order, and to be opened by the court April 12, 1920. The county judge in his affidavit states on that date, the court being in regular session, three bids were submitted and opened:

"The notice which had been given was 'to build' the courthouse, which we understood to mean a turnkey job, but the bids which were submitted were bids to built it on 'cost plus' plan. The court for the time considered the bids and undertook to accept the bid of Eberhardt Construction Company, but afterwards came to the conclusion that since the bid was not in conformity to the notice which had been given we had better go no further with that."

A contract with the construction company was prepared upon their bid, which was signed by the court, but not by the company, for the reason that they had no assurance that they could market the warrants. This contract was placed on the minutes of the court. It appears from the affidavits filed some time in November, 1919, the court got in communication with the Brown-Crummer Company, a brokers' concern, of Wichita, Kan., who proposed to buy the warrants. This company agreed to handle the warrants at par, with a charge of 3 per cent. thereon to pay for preparing the records, attorney's fees, and expenses of printing the warrants. The affidavit further states it was not the purpose that the court would sell the warrants outright to the brokers. The arrangements were so made that the contractor would know the warrants would be taken off his hands when delivered by the court to him, when the contract would be finally consummated with the construction company. The broker contract was to be taken

over by the construction company. It is stated in the affidavit that the brokerage company refused to handle the warrants, and that all the contracts fell down. The contract between the county and the Brown-Crummer Investment Company is dated January 14, 1920, and stipulates that the company agreed to pay the county par value for $200,000, 6 per cent. 1 to 20 years' warrants, for the construction of a courthouse, the county agreeing to pay 3 per cent. of the face value of the warrants. On the 17th of April, 1920, the commissioners' court entered an order on its minutes, approving the contract with the Eberhardt Construction Company, entering it at length upon the minutes, but on the 14th of May, 1920, the commissioners' court, at a regular session thereof, in consideration of certain objections urged by attorneys to provisions of the contract of date April 17th, above mentioned, recite that an amended contract had been entered into, duly signed by the parties thereto, which was then before the court for consideration and ratification. They, therefore, amend their order of April 17, 1920, so as to set out the contract and proceedings thereunder. This order, as well as the order of April 17, 1920, set out at length the petition to the commissioners' court, by the citizens of Dallam county, to build a courthouse and to issue warrants therefor, and also set out the notice, as published, for bids, and that it opened the bids, and determined that Eberhardt Construction Company was the best bid received for the construction in consequence thereof.

The court entered into a contract with said contractor on the 17th day of April, 1920. The contract is set out in full, and shows to have been signed by the Eberhardt Construction Company, but there is a blank left for the signature of the president of that company. The county judge and commissioners acting for the county show to have signed the contract. This contract stipulates that Eberhardt Construction Company shall give such time, attention and personal service as may be required by the county, in connection with arranging for doing the contract work involved in the erection and completion of the improvements, and shall perform all the duties and services ordinarily performed by and expected of general contractors, subject to the authority and control of the county and its architects. It provided generally that the contractors consult with the architect and the county as the work progressed, and should with promptness and diligence, etc., push the progress of the work, and act with skill in securing the construction according to plans and specifications. They should obtain bids for material, labor, and subcontracts from such responsible parties as are willing to make bids and to submit bids to the county and its architects, and co-operate with them in getting good competition, giving the county the benefit of discounts by reason of its standing and position. The county, through its architects, may direct and award all contracts for material, labor and subcontracts, and in doing so, may award either upon bids obtained by contractors or bids otherwise obtained, provided the county shall not be expected to enter into contract with parties who are not responsible mechanically or financially, or who, in the execution of work of subcontractors employ nonunion labor, whereby union labor would resent same and strike, etc. The contractors should make the formal awards and attend to all the details of the contract therefor, superintending the subcontractors, and see that the same is faithfully executed; settle and pay for all accounts for labor and material on said contracts and claims of every kind; approve all claims for work or material or claims under subcontracts, or demands of any nature before presentation to the county or its architect. Contractors were to order the material and see to keeping up liability insurance, fire insurance, etc. The contractors, at their own expense, to provide all necessary stenographic and accounting service; other expenses were all to be paid by the county. The contractor was subject to the control of the architects, as usual, where there is a superintending architect. It is also provided the contractors shall deliver to the architects the amount expended with invoices, etc., on the first of each month. Within five days the architect shall deliver to the contractor a certificate of the amount, and the commissioners' court shall consider and approve the certificate at its next regular meeting thereof.

It is stipulated the county, in consideration of the faithful performance of the above stipulation by the contractor, agreed to pay the estimates in the following manner: By the issuance and delivery to the contractor Dallam county courthouse warrants, bearing interest at the rate of 6 per cent. from their date, to be dated April 12, 1920, maturing approximately from 1 to 20 years, the county to pass all necessary orders concerning the issuance of the warrants and to levy the necessary taxes for their payment, and the warrants should be issued upon monthly estimates of the cost of material furnished and labor performed, as the work progresses, as provided in the contract. After the first installment of warrants hereunder, no further installments should be delivered until the contractor has delivered to the architect receipted bills for the full amount of previous payments. The contractors were to reserve 15 per cent. on all subcontractors' work, until 30 days after the completion of the work of each subcontractor. The statement of the architect should show the reservation. To secure the rights of persons furnishing material and labor, and liens and claims

that may be against the property, and for the faithful performance of the contract, the contractors were to execute a bond in the sum of $67,000, in accordance with the statutes of Texas. The contractors, for the services rendered for the county, it was stipulated, should receive from the county the sum of $13,000, payable in monthly installments, as the work progressed, less 15 per cent. reservation, to be paid in full within 30 days after completion of the contract. Nothing in the contract should be construed to require the contractors to show receipted pay rolls for labor, but it shall submit the pay rolls monthly, verified as to payments under oath, if required, to the county or its architect, for inspection and approval. The cost of the construction of the courthouse, as contemplated in the specifications attached to the contract, is estimated at $200,000. The warrants to amount to not exceeding $200,000, should be authorized by the court to be delivered according to the terms of the contract. The estimate as to the amount is not guaranteed by the contractors, but when $200,000 had been expended under the terms of the contract, the contractors were not bound to perform further services thereunder.

The court further decreed that the contract be ratified, approved, and confirmed, and declared it the act and contract of Dallam county; that the county courthouse warrants be issued payable to Eberhardt Construction Company, its assigns, or bearer, in the amount not to exceed $200,000, evidencing the debt of Dallam county to Eberhardt Construction Company, for the construction of the courthouse; that the warrants should be numbered from 1 to 200 inclusive, and be in denominations of $1,000, aggregating the sum of $200,000, and should be dated April 12, 1920. These warrants were to be made due and payable, a, certain number each year, ranging from 9 to 16, up to the year 1935, providing that they should also bear interest at the .rate of 6 per cent., payable semiannually, on the 12th day of October and April of each year. The form of the warrant is prescribed in the order, and is made payable to the contractor, its assigns or bearer, and has coupons attached for interest payments, and also prescribes a form for assignment to be executed by the contractors.

The order further provides that the warrants should be executed and delivered to the contractor on final completion and acceptance of said work, or upon monthly estimates and materials furnished and work performed as the work progressed. It was further provided in the order that to pay the interest on the warrants and to provide a sinking fund sufficient to retire them at their maturity, a tax of 25 cents on the $100 valuation of taxable property in the county

was thereby levied for the year 1920, etc. The county entered into a contract, dated August, 1920, with the firm of H. C. Burt & Co. of Houston, Tex., to purchase the county warrants at 90 cents on the face value. The county judge and commissioners testified that they knew that this contract was nonenforceable, unless the same or a similar contract be made between the contractors and purchasers of the warrants; that the contract was only intended on the part of the county to exist until such time as they could finish a contract with some construction company, and that when such contract should be made the contract with Burt & Co. would be taken over by the contractor, unless the contractor could be assured that the warrants would be handled. It was also in effect shown that $220,000 in county warrants would be taken over by H. C. Burt & Co., at 90 cents on the dollar.

The pleadings and affidavits in this case show that Dallam county has a courthouse, situated in the town of Dalhart. By affidavit it attempted to show that the courthouse is insufficient for county purposes, and in order to erect a new courthouse they selected a site, about half a mile from the present location of the courthouse, on a certain tract of land, and they made a contract for the purchase of the tract of land to be used as a site, creating an obligation to pay $15,000 therefor. There is nothing to show in the record that there was any advertisement for bids for the site for the courthouse, and no advertisement made therefor. Orders have been entered, directing the issuance of warrants for that purpose, bearing 6 per cent. interest. The commissioners' court also entered into a contract with the Union School Furniture Company, for the purchase of furniture for the contemplated courthouse, at a contract price of about $21,500, and they entered an order to issue warrants to the furniture company for the sum of $23,000, bearing interest at the rate of 6 per cent., and this contract seems to have been made without advertising for bids, and there were no competitive bids entered at the time, no competitive bids in making the contract with Brown-Crummer Investment Company or H. C. Burt & Co., of Houston, Tex., to sell the warrants. It seems that later the commissioners' court entered an order, levying a tax of 22¾ cents upon the $100 valuation of taxable property, which is asserted by appellee to be insufficient to pay the indebtedness of the county for public buildings and public purposes.

The appellee taxpayers set up the above facts, together with a great many others, alleging violation of the law in awarding the contracts without first advertising for bids thereon, and alleging that the warrants so called were in fact bonds, which are to be issued without being submitted to a vote of

the people, and for that reason void, and that each of the contracts entered into were void, and that if appellants, the commissioners' court, and others were not restrained from further pursuing their illegal acts, plaintiffs and other property taxpayers of Dallam county, Tex., would suffer irreparable injury; that plaintiffs are informed that the attorneys of the commissioners' court were then on the train on their way to Houston, Tex., with the purpose and intention to consummate the sale of the county warrants; that there is an imperative, urgent necessity for a restraining order to prevent the unlawful acts complained of. They prayed for a temporary writ of injunction against each and all of the appellants, restraining them from further proceeding in any and all of the matters complained of in the petition, and that the order and writ be returned to the proper court, and upon final hearing of the matters alleged in the petition that the injunction be made permanent. Hon. Reese Tatum, judge of the Sixty-Ninth judicial district, being disqualified, the petition was presented to Hon. Henry Bishop, judge of the Forty-Seventh district, who granted a temporary writ of injunction in all things, as prayed for in the petition, requiring a bond in the sum of $5,000, which was executed.

The appellants answered by numerous exceptions and special pleadings, deemed unnecessary to be set out at length, except that in the seventeenth paragraph of one of their answers they allege:

"That they have decided to build a new courthouse, which is to be built and erected under the direct supervision of the commissioners' court of Dallam county, Tex., and to be paid for by the day in Dallam county courthouse warrants, as the material is purchased and the work is done, and that said commissioners' court is now negotiating with the said Eberhardt Construction Company with the view of employing said company to manage and superintend the work and the construction of said courthouse, and to pay said Eberhardt Construction Company for their services by the day as the work is done, and that they are not required, under the law, to give any notice of the same, or to receive any competitive bids, all of which they allege is within their province and authority in law to do. A copy of the proposed contract with the said Eberhardt Construction Company is attached hereto, marked 'Exhibit A,' and made a part hereof."

The contract attached to the petition in its form does not seem to be materially different from the contract entered on the minutes of the court, except in a few instances, as that the bond would run from 1 to 15 years, and the estimated cost of the building is $220,000, instead of $200,000, and the following clause:

"For the faithful performance of the services herein required the party of the first part [the contractors] and the party of the second part [county] agrees to pay to said party of the first part a per diem which shall not exceed the sum of $13,000, for the time required to complete this contract. Said per diem to be determined by the architects and included in the monthly certificates furnished by the commissioners' court, as the work progresses, less fifteen per cent. reservation to be paid in full within thirty days after the completion of the contract."

The appellants made a motion to dissolve the injunction in vacation, and upon hearing in vacation before Judge Bishop, upon the pleadings of both parties and affidavits filed, the court refused to dissolve the temporary injunction, as requested, and continued the case over for trial. From this order the appeal is prosecuted.

[1] We think there can be no serious controversy but the contract with the Eberhardt Construction Company, as entered April 17 and May 14, 1920, is illegal and in violation of the statute. This fact seems to have been conceded by appellants upon the trial. The county judge said at the trial they had since abandoned the contract because not in conformity with the notice for bids to build the courthouse according to the plans and specifications. It will be perceived the county judge says they advertised for bids "to build" the courthouse under the plans and specifications prepared by Mann & Gerow; that all three of the bids received were on the "cost plus" plan. If the work was to be done by contract and not by day under the direct supervision of the commissioners' court, it is void under the statutes, as it was not awarded after competitive bids, the amount being more than $2,000. This contract did not fall under any of the exceptions mentioned in the statutes. The contract on its face shows the contractor furnished nothing but its personal services, skill, and ability as superintendent or business manager for the county. It was liable for no material or labor or for any of the costs of the building, but the county alone was responsible for such. For the services of the contractor the county was to pay it $13,000. There is no pretention that any notice was given for a contract of employment for a business manager or superintendent or notice given that such a contract would be made. The contract was therefore made with the Eberhardt Construction Company without such notice, and the law renders the contract illegal. V. S. C. S. Supp. vol. 1, §§ 2268a, 2268b; Headlee v. Fryer, 208 S. W. 213.

It follows under the statutes the county was not legally indebted to the contractor. The order authorizing the issuance of warrants in the name of the contractor was not authorized, and an attempt to do so was in violation of law.

The same is true with reference to the contract for furniture for the proposed new

courthouse with the Union School Furniture Company for $23,000.

[2] As to the contract with the architects and the contract for the purchase of the land for the building site, the question is more, difficult perhaps. The language of the statute is broad enough to cover such contracts. The statute provides:

"The commissioners' court of this state shall make no contracts calling for or requiring the expenditure or payment of $2,000.00 or more out of any fund or funds of any county * * * without first submitting such proposed contract to competitive bids."

The contract with the architects, it would seem, could be submitted to competitive bids —that is for plans and services in superintending. It may be true the commissioners' court would have the right to select skilled and competent architects, and to exercise its judgment in such matter. If there was more than one, we doubt not the court could exercise a sound discretion in selecting an architect or his plans, even if it did not choose the lowest bid.

As to the building site, its selection must of necessity be limited to a suitable location. Competitive bids to furnish such may be limited, but it is within the bounds of probability that competitive bids could be made as to location and the price of same. The law has made it a condition precedent that contracts over $2,000, calling for expenditure of money, be submitted to competitive bids, otherwise, they are void. At this time we are under the impression that the contract with the architects and the contract for a building site fall within the letter of the statute. If there is an exception which should be made in favor of these contracts, none has been pointed out or suggested by the briefs, and we hold for the purpose of this injunction that the judgment should be sustained. It is not our purpose to make an authoritive or binding holding so as to preclude us if upon further and more careful examination it should be ascertained this construction is incorrect. We make these suggestions for the reason that we apprehend difficulties may arise to the county, in obtaining the best professional services, in many instances necessary to the interest of the county, which may not be obtained upon competitive bids. At this time, however, we see no such exception in the law, either express or implied.

The answer of appellants set out in our statement indicates that the commissioners have abandoned all their former contracts with Eberhardt Construction Company, and have entered into, or will do so, a new contract with that company. The answer does not allege that the orders directing the issuance and sale of the warrants or the contract for the sale of the warrants by the Houston brokers is abandoned and set aside. The trial court we think properly refused to dissolve the injunction on the answer of a new contract or the purpose to make such contract.

[3] It is insisted by the appellants, as the county has decided to build the courthouse under the direct supervision of the commissioners and to be paid for by the day, that the commissioner should not be enjoined from such purpose. They refer to the contract attached to the answer, and especially to the paragraph quoted in our statement, as evidencing the employment of the contractor by the day under the direct supervision of the commissioners' court. The attached contract is not materially different from the contracts spread upon the minutes of the court, except this contract required the payment per diem not to exceed $13,000 for the entire time. The per diem to be determined by the architects, and to be entered in the monthly statement furnished by the commissioners' court as the work progresses. This provision makes the contract none the less a contract for $13,000, for the entire services to be performed in superintending the work, whether the time be short or long. It is to be paid in daily installments, instead of by monthly installments, as provided in the former contract. It is not to pay for work by the day, but an agreement to pay for the entire services be it one day or a thousand. The installment plan does not affect the essential purpose of the contract. In our view the contract is not such as falls under the expression "any work done under the direct supervision of the county commissioners and paid for by the day." In fact the contract employed the contractor to superintend the work to be done and relieve the court of "direct supervision."

The contract falls within the prohibition, and not the exception. It is an agreement to pay $13,000, creating a present debt for all future services to be performed as an entire undertaking.

It is not an open question in this state as to the power of the commissioners' court to contract to erect a courthouse for the county and to contract indebtedness therefor, and to pay interest thereon by making the proper order.

[4] Warrants may be issued therefor, but they are not negotiable paper, but are only evidence of the debt owing by the county. San Patricio County v. McClane, 58 Tex. 243; Davis v. Burney, 58 Tex. 364; Stratton v. Commissioners' Court, 137 S. W. 1170; Cowan v. Dupree, 139 S. W. 887; Floyd County v. Nichols, 142 S. W. 37; Allen v. Abernethy, 151 S. W. 384; Lasater v. Lopez (Sup.) 217 S. W. 373; Id., 202 S. W. 1039. So far as the county sought to make a binding contract without competitive bids, the commissioners' court was without the power to do so, and the contract so executed created no debt, or liability against the county. The warrants, therefore, evidence no indebtedness.

[5] As to Eberhardt Construction Company, it was entered into without competitive bids, and the $13,000 contracted to be paid that company created no liability. As to the proposed contract for the remainder of the estimated costs of the courthouse, $220,000, Eberhardt Construction Company assumed no obligation other than as superintendent. The county was to purchase and pay for the material, and pay for the labor necessary to complete the courthouse. There was no debt, therefore, due the contractor for such proposed material and labor. The purported contract simply constituted Eberhardt Company the agent of the county to take the warrants in its name, and collect the money and pay for the labor and material. In a sense the contractor was constituted a trustee for the county. We know of no statute authorizing the commissioners' court to contract with itself and thereby create a debt in order to issue warrants for the purpose of building a courthouse. It must be an obligation valid in law before warrants can be issued directing the treasurer to pay money out of any fund. It would seem the contract created no debt to be paid in money or in warrants. It would appear the purpose of the commissioners was to sell the warrants, and thereby obtain money for the use of the county.

[6] We think the trial court would have been justified in finding by this method the commissioners sought to borrow money on the issuance of warrants. This, as we understand, the court had no authority to do, except by issuing bonds. It probably had the power, if the court desired to erect a courthouse without entering into an agreement with a contractor, as it purchased the material, to issue warrants therefor, or warrants to pay for the necessary labor as the services are performed. But we question the power of the court to create a trustee under the guize of a contractor, and thereby create a debt which must of necessity be contingent in order to sell warrants to obtain money for the use of the county in building the courthouse.

We think the judgment should be affirmed.