TEXAS ELECTRIC & ICE CO. v. CITY OF VERNON et al. (Nos. 2238, 2261.)*

(Court of Civil Appeals of Texas. Amarillo. Oct. 24, 1923. Rehearing Denied Oct. 8, 1924.)

1. Municipal corporations ⬤⇒993(1)—Owner of competitive light plant not deprived of right as taxpayer to injunction against construction of municipal plant.

That petitioner for injunction against construction of municipal electric light plant has competitive plant, caused filing of suits to enjoin issuance of bonds, and will be largely benefited by injunction, does not deprive it of right to invoke equitable power of court, if injury is threatened to its property or interest as taxpayer.

2. Municipal corporations ⬤⇒237—Purchase on proposal in response to letters, held unlawful.

Purchase of engines for municipal electric light plant from company sending in sealed proposal in response to one of several letters written by city secretary to parties he thought might be interested held unlawful as not in compliance with Vernon City Charter, section 29, requiring that contracts for purchase of supplies be granted only on sealed competitive bids after due advertising.

3. Municipal corporations ⬤⇒921(1)—Transfer of improvement bonds in payment for engines for light plant unlawful.

Transfer of water, sewer, and permanent improvement bonds in payment for engines purchased for municipal electric light plant held diversion of such funds from purposes for which created, in violation of Const. art. 11, §§ 5, 6, and Vernon's Sayles' Ann. Civ. St. 1914, art. 880.

4. Municipal corporations ⬤⇒892—Diversion of funds not justified by ends sought.

Legal limitations on diversion of funds being as stringent as those applied to original power of taxation, same strictness of judgment must be exercised and officials may not go beyond constitutional or statutory limitations, because end sought is considered just.

5. Municipal corporations ⬤⇒880—City depository required to keep funds separately.

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 2457, city depository must keep several funds of city separately, in order that it may know that fund on which warrant and treasurer's check is drawn is sufficient to meet check.

6. Municipal corporations ⬤⇒864(5)—City may reasonably anticipate general revenues to pay debts.

City may reasonably anticipate general revenues to pay existing debts, but such revenues may not be largely exceeded for purpose of borrowing money for future use.

Appeal from District Court, Wilbarger County; J. V. Leak, Judge.

Suits by the Texas Electric & Ice Company against the City of Vernon and others.

---

From interlocutory decrees for defendants, plaintiff appeals. Reversed and remanded, with instructions.

See, also, 252 S. W. 255; 254 S. W. 503.

Berry, Stokes & Killough, of Vernon, and Templeton, Brooks, Napier & Brown, of San Antonio, for appellant.

Cook, Cook & Cole, Bonner, Storey & Storey and Harry Mason, all of Vernon, for appellees.

RANDOLPH, J. The two suits numbered as above have been, by agreement, consolidated. The first numbered suit has been before this court twice before this appeal. It was disposed of first by reversal because of the lack of necessary parties (252 S. W. 255); and again in vacation the appeal from the district court was by way of prayer for this court to issue a temporary injunction, which was denied because of want of jurisdiction. These last proceedings, as stated, were in vacation, and the opinion in that matter will be published with this opinion. (254 S. W. 503)

The trial court denied the appellant a temporary writ, but, on cross-action by appellees, granted them a temporary injunction, enjoining appellant, its agents, servants, and employees, pending a final trial of this case, from filing or procuring any one to file further suits against appellees or any of them, for the purpose of restraining or in any manner interfering with the city commission of the city of Vernon in the lawful discharge of their duties or with the lawful construction and operation of its waterworks or municipal light plant. From these interlocutory decrees the case was appealed to this court. Pending the appeal to this court the appellant presented to the district judge of Wilbarger county another petition for temporary injunction, setting up substantially the illegal acts complained of in the petition in cause No. 2238, and in addition charging the disposition of certain funds by the appellees to avoid various questions raised by appellant and to place them beyond the reach of the court in these cases, thus rendering the questions moot. This petition was also denied, and appeal was taken from that ruling, and is now pending on the docket of this court as cause No. 2261.

The appellant owns and operates a light plant in the city of Vernon. The citizens of Vernon voted a bond issue of $100,000 for the construction of a municipal light plant. One Montgomery brought a suit in the federal district court to enjoin the issuance of the bonds. It is not made clear what disposition has been made of the suit in the federal court, but Montgomery later filed suit in the district court of Wilbarger county to enjoin the issuance of these bonds. This last suit was continued in court by Mrs. Montgomery; Mr. Montgomery having died after filing same.

The issuance and sale of the $100,000 bonds having been blocked by the injunction suits brought by Montgomery, and construction of the municipal light plant having been delayed, if not defeated thereby, the city commission proceeded to secure a light plant by other means, and the questions to be decided here arise upon the legality or illegality of their acts in their efforts to secure a light plant for their city. There is no question in our minds that any of the transactions complained of were committed by the city officials of Vernon for any personal benefit to themselves.

[1] We are met at the threshold of the case by the suggestion on the part of appellees that the appellant having a competitive plant, and it appearing from the evidence that appellant occasioned the filing of the suits by Montgomery and will be largely benefited by the injunction prayed for by it, that a case is not presented that permits the interposition by the trial court, or this court, of its equitable powers. In our opinion this does not deprive appellant of the right to invoke the equitable power of the trial court or of this court, if an injury is threatened to its property or interests as a taxpayer. Altgelt v. San Antonio, 81 Tex. 449, 17 S. W. 75, 13 L. R. A. 383; Chippewa Bridge Co. v. City of Durand, 122 Wis. 85, 99 N. W. 603, 106 Am. St. Rep. 931; Keen v. City of Waycross, 101 Ga. 588, 29 S. E. 42.

Appellant charges that in order to secure money to construct the light plant the appellees having committed the following illegal and unconstitutional acts, contrary to the Constitution and laws of this state, and contrary to the provisions of the city charter under which the officials of the city of Vernon are acting:

(1) That on or about the 14th day of December, 1922, appellees entered into a contract for the purchase of engines in the sum of $24,375, without competitive bids being received therefor, as required by the city charter.

(2) That it traded street improvement bonds in the amount of $15,000, and certain waterworks and sewer bonds in the amount of $10,000 for said engines, in violation of the laws of the state and of the city charter.

(3) That it diverted $15,000 street improvement bonds and $10,000 waterworks and sewer bonds from the purposes for which they were isued, and applied them to an improper purpose.

(4) That it illegally exceeded the current revenues for the fiscal year by $20,000 to $25,000, and credited overdrafts and issued warrants in amounts in excess of its current revenues.

(5) That it illegally issued $40,000 funding warrants on March 19, 1923, partly to take up

such drafts, and partly to raise money to be spent in the future.

(6) That it illegally diverted a certain sinking fund that had been set aside to pay the interest and provide sinking funds on outstanding bonded indebtedness, and applied same to an unlawful purpose.

(7) That the tax limit under the city charter allowed to be levied, outside of the tax for school purposes, is $1 on the $100, and that there is an outstanding bond and warrant indebtedness against the city, for which tax levies have heretofore been made aggregating 53.34 cents on the $100, and which bonded and warrant indebtedness requires a tax levy by the city of at least 53.34 cents to provide for the interest and sinking fund on said indebtedness; that tax levies made by the city on June 12, 1923, were as follows: Seventy cents for school purposes; 30 cents for current expenses; 15 cents for streets and bridges, and 5 cents for the purpose of constructing or purchasing public buildings, waterworks, sewers, paving, and improving streets of the city; that said last mentioned levy was contained in section 3 of the city charter, and same was illegal, because the levy for current expenses and streets and bridges aggregates 45 cents, and, together with the amount necessary to provide for the interest and sinking funds on the outstanding bonded and warrant indebtedness, aggregates 98.34 cents, and, if said illegal levy, as set out in said section 3, is permitted to stand, the aggregate taxes for other than school purposes will run more than 1.53 cents on the $100, or more than 53 cents above the limit fixed by the charter.

(8) That on May 4, 1923, the district judge dissolved the temporary injunction which had been granted on the original petition filed in this cause and appeal was perfected to this court; that, knowing appeal had been perfected, the appellees transferred $7,002.45 from the permanent improvement funds to other funds, but permitted said funds to remain in the treasury; that, notwithstanding said funds remain in the treasury, the appellees filed affidavit, in which they aver that all said sums had long since been paid out and disbursed in the discharge of legal obligations; that such sums were so transferred in order to place same beyond the reach of the court.

(9) That appellees were continuing such practices of incurring overdrafts, and, unless restrained, they will continue to incur overdrafts and issue warrants far in excess of the current revenues, and at the close of the present fiscal year would undertake to issue funding warrants to fund said illegal debts; and

(10) That appellees, unless restrained will continue to divert the sinking funds set aside for the bonded indebtedness for improper and unlawful purposes, and will transfer certain special funds from the purposes for which they were created and apply them to unlawful purposes. Appellant's prayers contained in said petitions were appropriate and sufficient to the relief sought.

Appellees answered under oath in the trial court, denied the charges made, and by cross-action prayed for damages and for a temporary injunction restraining appellant from filing any other suit against them, alleging that the Montgomery suits were induced by appellant.

The above condensation of the appellant's pleadings presents, we believe, a sufficient statement of their contents, except as to the effect the pleadings will have, or were intended to have, upon parties holding the outstanding warrants and bonded indebtedness set forth above, and as to said parties the appellant disclaims as follows:

"(5) That while the plaintiff is not seeking in this suit to enjoin or cancel the $40,000 warrants that were illegally issued by the said defendants on or about the 1st day of April, 1923, as hereinafter more fully shown on the Fairbanks-Morse contract hereinafter referred to (as separate suits are being filed relative to said matters, to which other parties are joined with the defendants herein as parties defendant), the facts with reference thereto are here set out by way of inducement in order to more fully explain and elucidate the plan which was formed in the year 1922, and which is being pursued and carried out."

[2] The first question presented arises upon the purchase by the city of the engines for the light plant, without due advertisement and competitive bids. The city secretary testifies that no competitive bids were received in the purchase of the engines, and that the extent of his efforts to get such bids was the writing of a few letters to parties he thought might be interested. The city charter, section 29, provides that all contracts for public printing, public improvements, and public work of every kind and character and the purchase of supplies for use in any department of the city, exceeding an expenditure of $5,000, shall be on sealed competitive bids. This court has held in the case of Ashby v. James, 226 S. W. 736, that the commissioners' court of a county could not enter into a contract providing for the expenditure of more than $2,000 without giving notice and submitting same to competitive bidding. It is true that the court was there passing upon the requirements of article 2268a, Vernon's Ann. Civ. St. Supp. 1918, governing the power of commissioners' courts. But it naturally follows that the rule is applicable to an almost identical provision of the city charter under which appellees were acting. The writing of a few letters by the secretary, and the fact that the company furnishing the engines sent in a sealed proposal, does not comply with this requirement of the charter. It is contemplated that the

widest publicity be given to the city's intention to purchase and not that this intention shall be made known only to a chosen few.

[3] The city of Vernon contracted with Fairbanks-Morse & Co. for the purchase of certain engines, and expressly stipulated in such contract as follows:

"The company proposes to furnish machinery and material in strict accordance with the above specifications and guarantees for the sum of $24,375.00 to be paid as follows: By the delivery to the company of the series of $15,000 of the Vernon Street Improvement, series No. 4, bonds; and $10,000.00 of the city of Vernon, Texas, Water Extension No. 3 bonds, the receipt of which by the company is hereby acknowledged and confessed. Upon condition, however, that the said bonds are shown to be legally issued and a binding obligation upon the city; and upon such showing the said company is to pay to the city of Vernon in cash the sum of $1,250.00 and the further sum of $17,000.00 in cash and upon the arrival of said machinery at Vernon, Texas, the city agrees to pay to the said company the further sum of $17,000."

The evidence shows that the engines were received by the company; that the bonds were delivered to it; and that no money passed in the transaction. It also appears that in lieu of the $1,250 cash the company delivered a pump to the city.

Sections 5 and 6 of article 11 of the Constitution of Texas require that a provision be made for the payment of bonded or other indebtedness of a city by the creation of a sinking fund with which to meet the principal and interest of such indebtedness as it matures.

Article 880, Vernon's Sayles' Civil Statutes 1914, prohibits such sinking funds from being drawn upon or diverted to any other purpose other than that for which it was created.

[4] The transfer of the water and sewer bonds and permanent improvement bonds for the purpose of paying for these engines was a distinct diversion of such funds from the purposes for which they had been created. The law has wisely placed limitations upon the taxing power of municipalities. When the law places such limitations upon the taxing power, no official has the right to disregard them.

In this case it appears that the city proceeded upon the theory that all means of realizing money were permissible, and in their effort to realize funds to construct their light plant appropriated these bonds which were a charge upon other and distinct funds and for a purpose absolutely foreign to that to which they were so applied. A reckless disregard of the law's limitations will not be condoned by the courts. No officer may violate their requirements, because in his judgment the end he is striving for is a just one. When he comes to consider the end in view, he must look to it from the standpoint of the law. The limitations placed by the law upon the diversion or misuse of funds are as stringent as are those applying to the original power of taxation, and the same strictness of judgment must be exercised. In commenting upon the power to tax and its misuse, Justice Neill voices the true view that the law has of any violations of its provisions as to either the violation of the taxing power or the diversion and misapplication of funds. He says, in Stratton v. Commissioners' Court (Tex. Civ. App.) 137 S. W. 1177:

"The power to tax is an attribute of sovereignty, and the extent to which this power may be exercised for governmental purposes finds its only limitation in the Constitution. Unless restrained by the Constitution, not only is this power unlimited in its reach as to subjects, but it recognizes no limits, and may be carried to the extent of exhaustion and destruction, and thus may be used as a weapon of suicide against the government itself. Though necessary to the ends of government, when unrestrained, it is the most powerful and destructive engine of oppression that has ever been put in operation. It may take from the people their money and cast it into fetters with which to bind them as slaves, as history shows it often has done. The only things that can save the people from the destructive force of this power are the constitutional barriers they have erected against it, and a vigilant, fearless, faithful, and righteous administration of the law; so that it may not go beyond these barriers. Even then the power is dangerous; for we all know that ofttimes thieves do break through and steal." Carroll v. Williams, 109 Tex. 155, 202 S. W. 506; Veltmann v. Slator (Tex. Civ. App.) 219 S. W. 531; City of Beaumont v. Cartwright Land & Improvement Co. (Tex. Civ. App.) 224 S. W. 589.

[5] There is another question that should be passed on in this connection. The city treasurer, who is also cashier of the Farmers' State Bank, the city depository, testified that all of the moneys of the city of Vernon, when deposited with them, is kept in one account. When a warrant is drawn upon any certain fund, that warrant is presented directly to the bank, and is paid out of this general fund. The city depository keeps no record of different funds. Article 2457 of Vernon's Sayles' Civil Statutes requires that the city treasurer, where a warrant is drawn on him by proper authority, if there be enough money in the depository belonging to the fund upon which said warrant is drawn, and out of which the same is payable, to draw his check as city treasurer upon the city depository, in favor of the legal holder of said warrant, and to take up said warrant and charge the same to the fund upon which it is drawn, but in no case shall the treasurer draw a check upon any fund in the city depository, unless there is sufficient money belonging to the fund upon which said war-

rant is drawn to pay the same, and expressly provides that no money be paid out except upon such check.

It may be that the bank in becoming city depository viewed the matter as though they were acting in the spirit of accommodation to the city, but the law does not so view it. Not only is it required of the treasurer that he comply with the law, but it is also required of the depository that it so keep the funds of the city separately that it may know that any particular fund upon which a warrant is drawn, and for which the treasurer draws his check, is able to meet such check upon it.

[6] It is contended by appellant that the city exceeded its current revenues in the sum of $20,000 to $25,000 by means of overdrafts, when it had no reasonable expectations of paying same.

The city had issued four $10,000 warrants for excavating, putting down well, putting up high lines, for hydrants and work in connection with the city waterworks. The expense of running the city government for the fiscal year ending April, 1923, was $17,400, according to the testimony of the city secretary. The revenue from the waterworks and sewer plant is approximately $20,000, and the city collected into the general fund last year the sum of $24,389.63.

In addition, approximately $6,000 was collected in fines. While this last amount cannot be taken into consideration as an item of the current revenues, it is considered here in connection with the charge that the city officers, unless restrained, will continue these overdrafts, and as explanatory of their action.

Taking the revenues from the waterworks and sewer plant and the current revenues of the city we have the aggregate of the sum of $44,389.63. The four bonds, each for $10,000, were payable in 30 days and amount to $40,000, and the current expenses amount to $17,400, althogether aggregating $57,400. This clearly exceeds all probable city revenues, even if we include its waterworks revenues.

The city is allowed to reasonably anticipate its general revenues to pay its existing debts, but, where it appears that such revenue has been largely exceeded for the purpose of borrowing money for future use, such transactions are prohibited. It appears that only about $20,000 of the amount realized by the sale of said bonds was actually applied to the payment of overdrafts of the city, and approximately $20,000 was intended for future use in the construction of the light plant.

If, when the $40,000 warrants were issued, enough money had been in the treasury to meet them, beside defraying the current expenses such issuance would not have been

unauthorized, and, if these warrants had been issued payable at a distance of time in the future, and did not unreasonably anticipate their payment out of the current revenues, and a sinking fund had been provided for their retirement, the action of the city authorities would not have been subject to attack. Under the circumstances we hold that their action was a violation of the constitutional provision requiring a sinking fund and was also in violation of law, because it appears to have been impossible that it could have been paid out of the current revenues. Ault v. Hill County, 102 Tex. 337, 116 S. W. 359.

The current rate of taxation levied by the city for its various funds does not clearly appear to have exceeded the limit allowed by law, hence we overrule appellant's contention as to that.

We have here passed upon those matters that we believe require decision under the record and overrule appellant's other contentions as set forth in his propositions, because the evidence does not satisfactorily disclose their correctness.

From the whole record we are constrained to believe that, unless restrained, the city officials of Vernon will continue the unauthorized transfer of one fund to another; that they will divert the funds now on hand, and that they will continue the system of overdrafts, unless restrained, and for these reasons we sustain appellant's contentions as noted above, and reverse and remand this cause to the district court of Wilbarger county, with instructions that the judge of said court issue his temporary restraining order in accordance with his opinion.