### A. C. Ardrey et al. v. City of Dallas.

Delivered April 22, 1896.

**1. Municipal Corporation—Street Improvements—Repeal and Change of Charter.**

Under a city ordinance certain street improvements had been made, without any levy of assessments to pay for the work, and when the work was about completed, the city charter was repealed by a new one, without any saving clause. The city had not followed the requirements of the charter in doing the work, and the provisions of the new charter were different from and inconsistent with those of the old. Held, that the new charter would not authorize the levy of a tax upon abutting property owners to pay for such improvements. Following, City of Dallas v. Ellison, 10 Texas Civ. App., 28.

**2. Same—Levy Under Former Charter—Equity—Injunction.**

Under such circumstances, a court of equity would not, as a condition precedent to granting an injunction restraining the sale of the property under a levy made by the city in accordance with the new charter, require the owners of the property to pay the amount which might have been levied under the old charter, had its terms been complied with by the city.

**3. Same—Levy of Assessment—Compliance With Charter Required.**

Before a city is authorized to levy a special tax to pay for street improvements, it must have complied with every condition precedent prescribed by charter or ordinance, and a failure to base a levy on the estimates of the city engineer, and to advertise for bids for doing the work, where these matters are required by the charter will render the levy void.

**4. Same—Estoppel—Illegality of Method.**

Owners of property abutting on a street are not estopped from denying the validity of an assessment to pay for the street improvements, because they petitioned the city to have the work done, and stood by and saw it done, since they did not petition to have it done otherwise than in a legal manner.

Appeal from Dallas.    Tried below before Hon. R. E. Burke.

*Leake, Henry & Reeves,* for appellants.—1.    Municipal corporations derive their power to make local improvements solely from the statute. When the statute prescribes the mode in which the power shall be exercised, the mode prescribed becomes a limitation on the power.    The authority is strictly construed and must be strictly followed.    Frosh v. City of Galveston, 73 Texas, 409; Allen v. City of Galveston, 51 Texas, 318; Wood v. City of Galveston, 76 Texas, 132; Merritt v. Village of Portchester, 71 N. Y., 311; Myrick v. City of La Crosse, 17 Wis., 456; 2 Dillon on Municipal Corp., sec. 769, note.

2.    A city is not relieved from the necessity of complying with the provisions of its charter governing assessments for local improvement, because it performed the work at the request of a part of the adjoining property owners.    Steckert v. City of East Saginaw, 22 Mich., 107.

3. The court having found that the ordinance assessing plaintiffs' property with the cost of said improvement was passed according to the terms and provisions of the present charter, when it should have been passed according to the terms and provisions of the old charter, erred in rendering judgment against plaintiffs for the amount which the court found would be due according to the terms and provisions of the old charter.

*A. P. Wozencraft,* for appellee.

The brief for appellee failed to reach the Reporter.

NEILL, ASSOCIATE JUSTICE.—This suit was brought by appellants, A. C. Ardrey and thirty-four others, against the city of Dallas and J. C. Bogal, its tax collector, to enjoin the sale of their property fronting on Akard street in said city, upon the ground that the ordinance of May 7th, hereinafter copied, levying a tax upon their property for local improvements, is void because of the failure of the city to comply with the provisions of its charter, prescribing the manner in which such local improvements should be made and the taxes therefor assessed, levied and collected. A temporary writ of injunction was granted. The city interposed general and special exceptions, which · being overruled, it answered by a general denial, and special denials; and that by reason of plaintiffs' petitioning the council to improve the street, promising in their petition to pay their pro rata part of the expense, and the petition having been granted and improvement made in accordance therewith, with their full knowledge, and which enhanced the value of their property against which the tax is assessed,—they are estopped from objecting to the plans and specifications by which the improvements were made, or to any matter preliminary to letting the contract, or any irregularity occurring either prior to the letting of their contract or subsequent thereto; and by admitting that the special tax was assessed according to the charter of 1889, and averred that as the contract was outstanding, the tax, under the provisions of the amended charter, was properly assessed in accordance therewith.

The city asked that, should the court find any portion of the tax not justly due, it determine what portion is justly due, and enter an order granting the prayer in plaintiffs' petition only upon condition that they should within a time to be fixed by the court, pay into court the sum so found due. And that if the court should hold the tax should have been levied according to the terms and provisions of the old charter (of 1885), then that court decree the plaintiffs to pay into court the amounts of money that would be due levied according to the provisions of the old charter, and refuse to grant their prayer to perpetuate the injunction unless they should pay the money into court, or to the defendants within a time to be fixed in the decree. Attached to the answer is a tabulated statement showing the amount of the tax that would be

against the property of plaintiffs, respectively, if levied according to the provisions of the old charter.

The cause was tried without a jury, and the court decreed the injunction should be granted, provided the plaintiffs do equity by paying to the city of Dallas the just and lawful amount of taxes assessed against their property for the improvement of Akard street, which "just and lawful amount" the court found and entered in its decree, the respective sums found against each party opposite his name—stating that such sums would have been the amount of taxes assessed against the properties of said respective plaintiffs if the same had been levied and assessed according to the provisions of the city charter of the city of Dallas at the time of entering into the contract for the improvement of Akard street. It then decreed that if the respective plaintiffs should pay to the city of Dallas, or should pay into court for the benefit of said city, the respective sums, within twenty days from and after the rendition of judgment, the injunction theretofore granted should be perpetuated. But that if plaintiffs or any of them should refuse or fail to pay to the city of Dallas, or into court for its benefit, within twenty days, the sums in the judgment assessed against them, the injunction as to such plaintiffs so failing or refusing to pay the amounts, should be dissolved.

From this judgment the plaintiffs have appealed; and the following are the charter provisions, ordinances and facts applicable to the case as it is presented to us.

Section 15 of the charter of the city of Dallas (1885) provides: "That the city council shall have power by ordinance to cause to be graded, macadamized, graveled or otherwise constructed, improved or repaired, all streets, sidewalks, alleys and public highways, including cross streets in the city limits, at such times, to such an extent and out of such material, and under such regulations as the city council may provide by ordinance. The owners of property fronting or abutting on any street shall pay pro rata the costs of two-thirds of such improvement, according to the number of front or abutting feet; and the city shall pay the other third. * * * The improvement of intersections and abutments of other streets shall be paid by the city, etc. Whenever the city council determine, by ordinance, that such work shall be done, and the manner and extent of the same, they shall advertise for bids, giving the plans and specifications and extent of the improvements. The work shall be let to the lowest responsible bidder in the discretion of the city council, and with such bond as the council may determine. Said council shall levy a special tax on the property fronting or abutting on said street so improved pro rata, according to the number of feet of front or abutment. * * * Said tax shall be levied after said contract is let, and the time of payment of the same, and when it shall become delinquent, shall be specified by ordinance. Said tax shall be used for the payment of such improvement, shall be a lien from the time of levy, and shall be enforced as the collection of other taxes by advertisement and sale of the property * * * levied upon; provided it shall not be

necessary to sell at the same time as for other delinquent ad valorem taxes."

Section 175 of same charter: "That the cost of all work on any sidewalk, including curbing and guttering along side thereof, shall be entirely at the expense of the lot or lots fronting thereon, in proportion to the number of feet frontage, and shall be charged as a special tax thereon, in the manner hereinafter provided for. Wherever the city council, by their own motion or on petition of a majority of the owners of the property fronting on such proposed sidewalk, resolve to construct one, they shall cause the city engineer to make an estimate of the cost of such sidewalk, per square foot, and to give the amount, pro rata, which each property owner should pay, giving his or her name.

"The city council shall provide by ordinance for the construction of such sidewalk, determining its width, dimensions and the material out of which the same shall be constructed. The city council shall notify the property owners through the city secretary, that said sidewalk has been determined upon, and give such owners the right of having such work done themselves, under the superintendence of the city engineer. If a majority of the property holders have such work done, the others shall be liable for their proportion of the expense, and a special tax shall be levied for that amount. If the city shall have such work done, the entire cost of it shall be levied as a special tax on the property, in the proportion of its frontage on such sidewalk, and such taxes shall be a lien on such property, and in case the same is not paid at the time provided by ordinance for its collection, the assessor and collector shall advertise and sell as in other cases for taxes on real estate."

Section 176 of the same charter provides that, "In all cases where the city council may deem it necessary, and in all cases where the majority of the owners along any street, avenue or alley shall petition the same to be graded or macadamized, the city council shall have the work done as soon as practicable, * * *, and where it shall be determined by the city council to have such work done, the engineer shall make an immediate report of the probable cost of such work, and at the same time give the names of those owning property on either side of the street, and the number of front feet of each party. The city council shall levy a special tax on all of such property to pay the two-thirds of costs for which it shall be liable, and such tax when levied shall be a lien; and if such special assessment be not paid within the time prescribed by the ordinance directing such improvements, then the assessor and collector shall proceed to advertise and sell as in other cases."

Section 178 of the same charter provides that, "Contracts for street improvements shall be let to the lowest responsible bidder, and of such contractor the city council shall require such bond as they may deem proper."

The charter granted the city by the Act of March 13, 1889, provides by section 154, that "The city council shall have power and authority to grade, fill, repair, macadamize, etc., or otherwise improve any avenue,

street or alley or any portion thereof in the city, to such extent and out
of such material and under such regulations as said council may provide,
whenever a majority of the aldermen present vote in favor of such
improvement.    All grading of streets and sidewalks shall be at
the cost of the city.   *   *   *.   "All other improvements" [except
repairing] "shall be entirely at the costs of the fronting or abutting
property owners of each street so improved, who shall pay pro rata
such entire costs according to the number of front or abutting feet
respectively owned by them on such street.   *   *   *   The pro rata share
of the costs of such improvements due from property owners   *   *   *
together with the expense of collecting the same, shall be a special
tax and lien against the lots or blocks fronting or abutting upon the
street.   *   *   *.   The city council shall, by resolution duly passed,
designate the street or streets, avenues or alleys, or portions thereof to
be improved, the nature of the improvements to be made, and the ma-
terial to be used.   Whenever the council shall so determine upon such
improvement, they shall advertise for bids, giving the plans, specifica-
tions and extent of the improvements.   The work shall be let to the
lowest responsible bidder in the discretion of the council, and with such
bonds as the council may require.   Said council shall levy a special tax on
the property fronting or abutting on the street so improved for the pro rata
amounts due from property owners.   Said tax shall be levied after con-
tract is let, shall become due and delinquent as the ordinance levying the
same may specify, shall be a lien from the time of the levy, and shall be
used for the payment of the improvements.   If said taxes are not paid as
provided by ordinance, their collection shall be enforced as the collection
of other taxes by advertisement and sale of the property.   At such sales
the collector shall execute a deed similar to the one executed when prop-
erty is sold for ad valorem taxes.   All contracts for street improvements
now outstanding shall be paid in accordance with this charter, and the
city council, in making the levy of assessments to pay said improve-
ments, shall make them under the provisions of this section."   And, by
section 155, that "In all cases of special assessments for local improve-
ments of any kind against any property, persons or corporations what-
sover, and said assessments having failed to be valid, in whole or in
part, because for want of form, insufficiency, or for non-compliance
with the charter provisions governing such assessment, the city council
shall be and are hereby authorized to reassess such special taxes or
assessments, and to enforce their collection in accordance with the char-
ter provisions existing at the time the reassessment is made."

The following petition was signed by most of the plaintiffs (but it
does not appear from the record whom of them) and a number of prop-
erty owners along Akard street, and presented to the city council, viz:

"DALLAS, TEXAS, April —, 1887.

"To the Honorable City Council of the City of Dallas:

"GENTLEMEN:—We, the undersigned citizens and owners of property

on Akard street of the City of Dallas, respectfully petition your honorable body to order Akard street paved on the same plan, terms and specifications as Bryan, Ross Avenue and other streets recently ordered paved; and we do hereby agree to pay our pro rata share of the costs of said paving, according to the number of front feet set opposite our names."

Opposite each name was put down the number of front feet owned by each party signing.

This petition was granted by resolution of the council, passed April 18, 1887.

On June 1, 1886, the city council adopted plans and specifications for all streets thereafter to be macadamized. This was a general order and related to no particular street. These plans and specifications were not entered upon the minute book until after 1887. They are the same attached to the contract, hereinafter referred to, to Keller, and the same used for the Bryan street improvements. They were filed in the office of the city secretary on June 1, 1886, and have ever since remained on file in said office.

The city council, on May 19, 1887, passed an ordinance providing for the improvements of Akard street. So much of this ordinance as is necessary to the consideration of this case is as follows:

"Be it ordained by the city council of the city of Dallas, that curbing and guttering are hereby established and ordained built on Akard avenue, from Commerce street to the corporate limits, and the same is hereby ordered to be macadamized, graveled and improved 35 feet wide between said designated points, said improvement to be of the material mentioned, and in accordance with the plans and specifications therefor, adopted by the city council, and now on file in the office of the city secretary."

"That the owners of property fronting or abutting on said street between said designated points shall pay the entire cost of said curbing, and two-thirds the cost of said street improvement, less the space occupied by what is known as the Belt Line Street Railroad, according to the number of front or abutting feet, and the city shall pay the other one-third."

"That the city council shall levy a special tax on the property fronting or abutting on said street, so ordered improved, to pay pro rata two-thirds of the costs of said improvements, according to the number of front or abutting feet thereon. Said tax shall be levied after contract for said improvement is let, and the time of payment of the same and where it shall be paid, specified in the ordinance levying the same."

"That bids be advertised for 20 days for said improvements, and the contract be let in accordance with the provisions of the city charter in such cases made and provided."

The city caused the following notice to be published in the official organ for the time prescribed by the charter and ordinances, viz:

NOTICE

STREET PAVING.

NOTICE TO CONTRACTORS.

"In accordance with an ordinance passed by the honorable city council, sealed proposals will be received at my office until 6 o'clock p. m. June 4, 1887, for the improvement of Akard avenue, from Commerce street to the corporate limits. Said improvements to consist of grading, curbing, and macadamizing, in accordance with plans and specifications now on file in my office. Blank forms for bids will be furnished bidders, and no bids will be received unless in form, and in duplicate.

"The city reserves the right to reject any or all bids.

"Dated May 20, 1887.

"[Signed]          W. E. PARRY, City Secretary."

The contract was awarded to W. E. Keller, upon his bid therefor, the same being the best and lowest.

The following ordinance was passed and approved, September 17, 1888, viz:

"An ordinance amendatory of an ordinance ordering street improvement on Akard street.

"Be it ordered by the city council of the city of Dallas, that in addition to the street improvement ordered on Akard street by an ordinance approved May 19, 1887, * * *, there is hereby ordered that said street be macadamized with hard blue flint rock from Commerce street to Mill street, said rock to be of the same kind and quality as that put on Ross avenue. All of said work is to be done under the supervision of the city engineer, and in accordance with plans and specifications to be furnished by the city engineer."

"Said work shall be an additional charge on the costs of improving said street, and shall be taxed up with the same against the fronting and abutting property, as provided for in the provisions of the city charter in such cases made and provided."

"The following ordinance was passed and approved May 7, 1889, viz:

"Be it ordered by the city council of the City of Dallas that upon all property in said city fronting or abutting upon either side of Akard avenue from Commerce street to Mill creek, there is hereby levied a special tax or assignment of 1.3002, north of St. Louis street, and 1.5215 south of St. Louis street per front abutting foot, and 39 cents additional for curbing; all to pay for improving and paving said street between said limits, exclusive of street intersections."

"The names of the owners of said property, description thereof, and respective amounts of said tax are more particularly set forth as follows:

WEST SIDE.

| NAME. | BLOCK. | LOT FT. | AMT. | FT. CURB. AMT. | TOTAL. |
|-------|--------|---------|------|----------------|--------|
| Jno. Herman. | 71. | 100. | $130.02. | $39.00. | $169.02. |

(Here follow names of plaintiffs, and description of their property, and amount of their assessments as alleged by plaintiffs.)"

The ordinance provided the amounts should be paid at a stated time, should be a lien and enforced by sale if not paid. This ordinance levied against plaintiffs and the railway company the entire costs of macadamizing said avenue, except at the intersections of streets, but did not levy any portion of the cost for grading and excavating, the city paying that portion.

This ordinance was passed according to the provisions of the charter of 1889. About 90 per cent of the work was done before the passage of this charter, the balance was completed afterwards.

The record in this case does not show that the engineer made a report of the probable costs of the improvements to be done under the ordinance of May 19, 1887, before the contract was entered into with Mr. Keller. About the time of the passage of the ordinance levying the tax in 1889, after all the work had been completed under said contract, the engineer did make a report of the cost of the work, and this report was made the basis of the ordinance levying the assessment upon plaintiffs' property. The report was in the form required by the charter, but was not made until after completion of the work. Before the work was let, the engineer verbally stated to the council about what the improvement would cost.

These are the only reports as to the cost of the improvement on Akard street made by the city engineer.

A portion of the tax assessed against plaintiffs' property was for work and improvement done under and by virtue of the ordinance of September 17, 1888. The improvements done under this ordinance consisted in macadamizing with hard blue flint rock. The city let two separate contracts, one for laying and crushing stone upon Akard street, and the other for crushing the same. The advertisements for bids for crushing was as follows:

NOTICE TO CONTRACTORS.

"Sealed proposals will be received at the office of the city secretary of the city of Dallas until 6 o'clock April 14, 1888, for crushing 100 carloads of stone, the city to furnish the crusher set up. Parties bidding will furnish their own power, and receive the stone on the car. Bids will be based on the carload of 30,000 pounds each.

"April 8, 1888.        [Signed]        W. E. PARRY, City Sec't'y."

If any advertisement or notice for bids for laying the rock on Akard street was ever given or published, there is no record evidence of it. There is, however, no order of the council directing a record of advertisements for bids to be kept. The minute book shows that bids for laying the said rock on Akard street were received by the council, the bids reciting that they were in response to advertisements therefor. The contract for hauling and pressing the stone was awarded to Harrison & Sharp, under their bid therefor.

The following is the report of J. S. Thatcher, city engineer, viz:

"DALLAS, TEXAS, March 24, 1888.

"Estimate of work done by Keller on Akard street, 2000 feet finished, amounting to $8376.24, on which payments amounting to $7119.80 have been made, leaving balance $1252.43. The whole work, if completed to the bridge, under present contracts would amount to about $13,-638.38, and of this all but 500 feet is laid with rock and the curbing set. The grading is done."

At the time the work was being done, plaintiffs knew of it, and made no objections to its execution or its legality until after the tax was levied and defendant was proceeding to forcibly collect the same.

The amounts assessed against each of the plaintiffs as set forth in the judgment, is the amount of improvement in front of the property of each, if the same had been properly and legally levied as provided by the old charter.

It is seen from the ordinance of May 17, 1889, that a special tax was thereby levied upon all property abutting on Akard avenue from Commerce street to Mill creek, to pay for improving and paving the street between said points, exclusive of street intersections. The ordinance was passed under the new charter, adopted in 1889, which expressly repealed the one of 1885, under which the contracts were made and most of the work done. That the provisions of these charters affecting street improvements differ radically in essential features, is obvious from an inspection of them. These manifest inconsistencies are clearly pointed out by Chief Justice Lightfoot in City of Dallas v. Ellison, 10 Texas Civ. App., 28, in which he demonstrates conclusively that abutting owners cannot be taxed under the new charter for street improvements made under a contract entered into by virtue of the provisions of the old; and on this question we rest upon his opinion in that case, and in City of Dallas v. Atkins, 32 S. W. Rep., 782. The ordinance levying the tax was therefore void, and the sale threatened under it rightfully enjoined.

The tax never having been assessed and levied as required by the charter of 1885, could the court, after such charter had been repealed, ascertain what the tax would have been against each abutting property owner had it been properly assessed, and make its payment by plaintiffs a condition to the perpetuation of its injunction restraining an illegal sale of their property? As the court could hardly do what could not have been done under the repealed charter, the question arises as subsidiary to the one put: Were such conditions performed under the old charter as were necessary to charge appellee's property with the cost of its payment? The authority of a city to make assessments for street improvements does not exist unless conferred by legislative enactment, and cannot extend beyond what is thereby clearly delegated; and if the mode in which the authority shall be exercised is prescribed, the mode must be pursued. The ordinances and resolutions in the exercise of

such authority must be adopted in due form of law, and the municipality must keep them afterwards; for to entitle it to recover from the abutter the expense of constructing local improvement, it must comply with all conditions precedent, whether prescribed by charter or ordinance. Dill. on Mun. Corp., secs. 769, note, 811; Cooley on Taxation, 656; Wood v. City of Galveston, 76 Texas, 132; Frosh v. City of Galveston, 73 Texas, 409; Allen v. City of Galveston, 51 Texas, 318; Flewellen v. Proetzel, 80 Texas, 195; City of El Paso v. Mundy, 85 Texas, 316; Connor v. City of Paris, 87 Texas, 32.

Upon these authorities it is clear that the requirements of the charter of the immediate report, after the council determined to have the work done, by the city engineer of the probable cost of the work; the levy of the special tax on all the property abutting of the owners named in such report; and the advertisement for bids, giving plans, specifications and extent of improvements, were conditions precedent to charging appellants' property with the costs of the improvement on Akard street. That none of these conditions were performed, is equally clear from the evidence. The required report of the engineer was never made. Without it there was no authority to levy the special tax. The ordinance approved May 19, 1887, provided for curbing, guttering, macadamizing and improving the street. No plans were adopted. The advertisement for bids was for improvements, consisting of grading, guttering, curbing and macadamizing in accordance with plans on file in the secretary's office. Over a year after Keller's bid was accepted—on September 17, 1888—the ordinance, under which he contracted, was amended by ordering the street macadamized with hard blue flint rock from Commerce street to Mill creek—the latter point, as is apparent from the evidence and pleadings, not then being within the corporate limits of the city. There was no advertisement for bids under this amendment. There was one for crushing stone, but it was made April 8, 1888, before the amendment was passed. As to the curbing and guttering, the appellants were entitled under the charter to have this work done, under the supervision of the engineer, themselves. This right was denied them. None of the conditions precedent, necessary to charge appellants' property with the cost of the improvements, and subject it to sale in default of its payment having been performed under the old charter, and as the court could not adjudge, even had the charter not been repealed, a right to the city which was not given by its charter and did not arise from proceedings had in pursuance of it, it is clear that the court could not assess a tax against appellants and make its payment a condition precedent to the perpetuation of an injunction restraining an unauthorized sale of their property, unless its right to render such judgment arose from some other source.

The next question then is, did appellant's petition to the city council to improve the street, their promise therein to pay their pro rata part of the expense, its acceptance by the city, and the improvement of the street thereafter with their knowledge, render them liable and subject their

property to the amount assessed against them by the judgment? The very petition presupposes that the improvement will be made in compliance with the provisions of the charter, which would, if done, independent of their promise, fix their liability. But as we have seen, there was no such compliance; the condition upon which the promise was made being unperformed by the city, no liability on that account attached to appellants. As was held in Motz v. Detroit, 18 Mich., 495, "where parties petitioned the city authorities to have certain improvements made which were provided for by the city charter and ordinances, they must be understood as requesting that it be done under such charter and ordinances"; and in Stackert v. City of East Saginaw, 22 Mich., 111, when the provisions of the law for making the improvements were valid, the failure of the council to follow the statutory provisions relieved the petitioners from liability, if their interests were injuriously affected by such failure.

There was no promise in the petition to give a lien upon their property for the value improvements or any part of it, and as the lien did not arise either from a compliance with the law in making the improvements or from the promise of the parties, it did not exist, and the court could not create it by its decree. There was no agreement on the part of the petitioners to pay anything except their pro rata share of the paving —appellants are charged with a pro rata share of grading, guttering, curbing and macadamizing, and not for paving. Besides, it does not appear who of the appellants signed the petition. The evidence that most of them signed it, without showing by whom of them it was signed, would not authorize a judgment against all on such promise, or against any particular one of them. It is thus seen that appellants incurred no liability by reason of the petition to the council which would subject their property to the payment of · the amount assessed against it in the judgment.

The repeal of a tax law puts an end to all right to levy a tax under it, even in cases already commenced, unless the right is reserved in the repealing statute, and statutory remedies for the enforcement of taxes are gone when the statute is repealed. In this case the ordinances ordering the work had been passed, the contracts made, and almost performed when the act was repealed. At the time of the repeal there was not only no assessment of the taxes under the act, but no steps taken by the city to make the assessment. No assessment of taxes could be made under the new charter except in compliance with the terms of section 154 of the act, the provisions of which, as has been shown, are wholly inconsistent with the provisions of the repealed act under which the work was sought to be done. City of Dallas v. Ellison, and City of Dallas v. Atkins, supra.

We therefore conclude that the court could not, after the charter of 1885 was repealed, ascertain what tax would have been levied against each abutting property owner, had it been properly assessed, and make its payment by appellants a condition to be performed before perpetuat-

ing the injunction restraining an illegal sale of their property; and are of the opinion that the preliminary injunction should have been absolutely perpetuated.

Therefore, the judgment of the District Court is reversed, its judgment set aside, and judgment is here rendered perpetually enjoining and restraining the appellees from the sale of appellants' property, or the property of any of them, under any proceedings whatsoever for the collection of said tax, or any tax or cost that may be assessed under said illegal proceedings for improving Akard street, upon which the property abuts.

*Reversed and rendered.*