## GEO. L. SIMPSON & CO. v. CITY OF LUBBOCK. (No. 3123.)*

Court of Civil Appeals of Texas. Amarillo.
Dec. 5, 1928.

Rehearing Denied Jan. 9, 1929.

Robt. A. Sowder, of Lubbock, for appellant.
Bean & Klett, of Lubbock, for appellee.

JACKSON, J. The appellant, Geo. L. Simpson & Co., a corporation, instituted this suit in the district court of Lubbock county, Texas, against the appellee, the city of Lubbock,

---

*Writ of error dismissed.

a municipal corporation, to recover the sum of $1,745 for the alleged breach of a contract made by appellant with the city for the purchase of certain of its funding bonds.

The appellant alleges: That on April 5, 1927, it entered into a contract with appellee for the purchase of funding bonds aggregating the sum of $446,000. That said funding bonds were to be issued and sold by the city for the purpose of discharging certain valid warrants theretofore issued by the city, provided an election for the issuance of said funding bonds thereafter to be held resulted in favor of the issuance of said bonds. That by the terms of said contract it was agreed that the funding bonds, if the election carried, should be and were sold to appellant for the consideration of par and accrued interest at the date the funding bonds were delivered. That the city would assemble the warrants, or cause them to be assembled, at the National Bank of Commerce in New York City, or at the office of the state comptroller of Texas, at Austin, and appellant would pay therefor as per the terms of the contract and receive funding bonds for the amount of warrants paid for. That on May 3, 1927, an election was legally held in the city of Lubbock, which resulted in favor of issuing the bonds; the bonds were approved by the Attorney General, registered in the office of the comptroller, and issued by the city, and appellant's contract for the purchase thereof ratified. That the city failed and refused to assemble the outstanding warrants, so that appellant could take them up and present them to the state comptroller and receive the funding bonds therefor, but authorized the comptroller to deliver to other parties, to wit, J. B. Oldham and W. A. Myrick, warrants amounting to $349,000, and receive therefor the funding bonds that had been purchased by the appellant. That appellant was required to and did deposit $7,500 with appellee as a guaranty that appellant would pay for said warrants and accept said bonds, which were to be delivered only in exchange for outstanding warrants. That the comptroller, by authority of the city, delivered said funding bonds, amounting to $349,000, to Oldham and Myrick, who demanded of appellant $1,745, in addition to the price appellant had contracted to pay appellee therefor, and in order to save the $7,500 deposited by appellant with the city, and the profit it had made in a resale of the funding bonds, it was necessary for appellant to pay and did pay said $1,745 to Oldham and Myrick. That appellant was at all times ready, willing, and able to pay the agreed price for such warrants, and would have paid for said warrants and presented them to the comptroller, had the appellee complied with its contract. That no other warrants of the city were obtainable, which appellant could secure and present to the comptroller and receive funding bonds therefor.

The appellant sufficiently pleads the effect of its contract with appellee, a copy of which is attached to and made a part of its petition, and, in so far as it is necessary to a disposition of this appeal, reads as follows:

"Lubbock, Texas, April 5, 1927.

"To the Honorable Mayor pro tem., Mr. A. V. Weaver, and Members of the City Commission, Lubbock, Texas—Gentlemen:

"We desire to submit the following proposition with reference to refunding city of Lubbock, Texas, outstanding indebtedness:

"It is our understanding that your city now has outstanding warrant issues aggregating approximately $446,000, which you can fund immediately.

"After an election has been held in the city of Lubbock, and the above indebtedness voted into a funding bond issue by a majority vote of the taxpayers voting at said election, we agree to take up and pay for the above warrants, or such amount as the city can deliver or have delivered to the National Bank of Commerce, New York City.

"Said funding bonds to bear interest at the rate of five per cent. (5%) per annum and to be dated on or about May 20, 1927, and in the denomination of $1,000, maturing serially, without option of prior payment, in ten to forty years from date thereof, principal and semiannual interest payable at the National Bank of Commerce, New York City, New York.

"The above designated warrants or such part thereof are to be delivered to the National Bank of Commerce, New York City, and when presented are to be taken up and paid for by us, and we agree to present same to the office of the comptroller of state of Texas, to be exchanged for average maturities of said funding bonds. Said bonds, when voted, shall be placed by the city officials with the comptroller of the state of Texas. * * *

"It is our understanding that approximately $135,000 of the above indebtedness is callable at 101 and interest. It is understood that we take said indebtedness up at the above price and shall be immediately reimbursed by the city of Lubbock for such amount above par and accrued interest as we pay, namely, 101 and interest. It is further understood that we will reimburse the city of Lubbock for accrued interest on the funding bonds from date of same to date of exchange.

"We inclose herewith our cashier's check or certified check in the amount of $7,500, which is to be held uncashed by you as evidence of our good faith and returned to us upon consummation of this contract. Said check to be cashed as full and liquidated damages in event we break faith.

"Your acceptance of this proposal will constitute a contract of sale and purchase between us. * * *

"Upon motion made by Mr. Posey, seconded by Mr. Jones, the above proposition was ac-

cepted and approved and the mayor pro tem., A. V. Weaver, and city secretary were authorized to execute the contract and the same is so approved and accepted this the 5th day of April, A. D. 1927."

The appellee answered by general demurrer, general denial, and alleges that appellant did not give notice in writing of its claim to the city within 30 days after its cause of action accrued, as required by the charter of the city of Lubbock; that if the comptroller turned said bonds over to W. A. Myrick and J. B. Oldham, in violation of the contract between appellant and appellee, such act was without the knowledge, consent, or authority of the city; that, if appellant paid to said parties or either of them a premium, it was because said parties had acquired warrants or bonds from the lawful holders thereof and had the right to charge such premium, of all of which the city had no knowledge.

Other matters are contained in the pleadings of each party to this litigation, but such matters are not involved in this appeal.

In response to the only issue submitted by the court, the jury found, in effect, that the city of Lubbock did not authorize or require the comptroller to deliver to W. A. Myrick and J. B. Oldham, or either of them, bonds to the amount of $349,000 in exchange for warrants. On this verdict the court rendered judgment in favor of the city of Lubbock and that the appellant, George L. Simpson & Co., take nothing by its suit, from which judgment this appeal is prosecuted.

The appellant, by several assignments, which we will consider together, presents as error the action of the trial court in submitting to the jury whether or not the city authorized the comptroller to deliver to Myrick and Oldham funding bonds in exchange for warrants, because the evidence is conclusive that the city had sold said funding bonds to appellant, and had agreed to deliver the warrants or have them delivered at the National Bank of Commerce in New York City, to be paid for by appellant and by it presented to the comptroller in exchange for the funding bonds; that the city failed and refused to have the warrants delivered at the National Bank of Commerce of New York City for redemption, and authorized the comptroller of the state of Texas to deliver bonds to any one who presented to him warrants redeemable in said funding bonds.

By the terms of the contract pleaded and introduced in evidence, appellant agreed to take up warrants to the amount of $446,000, or such amount thereof "as the city could deliver or have delivered to the National Bank of Commerce, New York City," and appellant agreed "to present such warrants to the office of the comptroller of the state of Texas to be exchanged for average maturities of said funding bonds." This contract was accepted by the city, and in so doing it obligated itself to comply with the terms thereof.

The appellant deposited with the city its check for $7,500 as evidence of its good faith, and to be cashed by the city as liquidated damages if appellant failed to keep its contract. The appellant resold the funding bonds at a profit. The funding bonds, after the election and their approval by the Attorney General, were filed with the comptroller. The warrants, on their face, were payable at the National Bank of Commerce in New York City, and the appellee made no effort to have its outstanding warrants delivered at the bank in New York, except it issued a call for $150,000 of its outstanding warrants to be paid at said bank in New York.

The appellee advised the comptroller, in a letter executed by the mayor and secretary of the city of Lubbock, relative to the funding bonds, that, "when the Attorney General has approved the bonds, you are authorized to register and deliver same to the holders of the warrants when and as the warrants are delivered to you for cancellation," and to "deliver average maturities of the bonds."

In response to a letter asking further information, the comptroller was advised by wire by the mayor of Lubbock as follows: "This is your authority to deliver any part of $650,000 funding bonds of city of Lubbock after registration to holder of equal amounts of outstanding warrants of said city upon delivery to you and cancellation by you of such warrants. Delivery of such bonds after cancellation of such warrants to be made to such bank or banks as holders of warrants may direct at their own expense. Bonds to be delivered shall be of average maturity."

The city of Lubbock was issuing funding bonds in the amount of $650,000. In our opinion, the language of the letter and the telegram each convey the same information, and authorized the comptroller of the state of Texas to deliver to Mr. Myrick and Mr. Oldham, or any other holder of outstanding warrants, funding bonds of the city in exchange for such warrants, and that it was the duty of the court to construe said instruments. R. H. Dearing & Sons v. Texas Const. Co. et al. (Tex. Com. App.) 1 S.W.(2d) 265.

The appellee contends that the evidence fails to show that either the letter or the telegram was the act of the city, but that it appears to be the act of individuals, and therefore not binding upon the city. The letter was signed by the mayor and the city secretary, and the telegram signed by the mayor, and three of the commissioners testified, in substance, that, when the bonds were sent to Austin, the comptroller was ordered to deliver them to the holders of the warrants, whoever they might be. The evidence is uncontroverted that appellant received certain refunding bonds from Oldham and Myrick, who knew of appellant's contract with the city; that the comptroller had delivered said bonds to Oldham and Myrick in exchange for warrants because of the letter

and telegram; that appellant was required to pay Oldham and Myrick, in addition to the contract price, $1,745 for the refunding bonds received from them, and that the city got the benefit of its contract with appellant. Under these circumstances, the testimony is sufficient to show that the letter and telegram are binding upon the city. Sluder v. City of San Antonio (Tex. Com. App.) 2 S.W. (2d) 841.

There is no question about the authority of the city to make the contract for the sale of the bonds, or the validity of such contract, and a municipal corporation, making a contract by its proper officers or agents, is liable for a breach thereof in the same manner and to the same extent as individual persons or private corporations. Horn v. Matagorda County et al. (Tex. Com. App.) 213 S. W. 934.

The appellee contends that appellant is not entitled to recover, because it failed to comply with section 8 of the city charter of the city of Lubbock, which reads: "The city shall not be liable on account of any claim for damages to any person or property unless the person asserting such claim or some one for such person, shall give the city written notice of such claim and of the facts upon which it is based, within thirty days from the time it is claimed that such damages were inflicted," etc. The appellant pleaded a waiver of this notice and offered sufficient testimony to make it an issue. Cawthorn v. City of Houston (Tex. Com. App.) 231 S. W. 701. But, as the appellant failed to ask that said issue of waiver be submitted to the jury, it was abandoned. Ormsby v. Ratcliffe (Tex. Sup.) 1 S.W.(2d) 1084.

Such provisions of city charters, requiring notice of injury to be given within 30 days after it has been received, are held valid by the decisions of our Supreme Court, and, as we understand them, a failure of the injured party to give notice of such injuries, in compliance with such provision, defeats a recovery in cases where such provision is applicable, and the city is authorized to avail itself thereof as a defense. City of Houston v. Isaacks, 68 Tex. 116, 3 S. W. 693; City of Dallas v. Shows (Tex. Com. App.) 212 S. W. 633; Cawthorn v. City of Houston (Tex. Com. App.) 231 S. W. 701. The question, therefore, for determination, is whether or not this provision of the city charter of the city of Lubbock is available to the city as a defense for the breach by it of a valid contract. Judge Gaines, speaking for the Supreme Court in City of Houston v. Isaacks, supra, says, relative to a similar provision:

"The provision is a most stringent one, and its practical effect would seem to be to exempt the city from all liability for such defects as ordinarily accrue. But we cannot say that it should not be enforced in a case to which it is applicable." In City of Dallas v. Shows, supra, the Commission of Appeals, in an opinion approved by the Supreme Court, says: "The requirement of notice of injury as a condition precedent to an action, while valid and in accord with sound public policy, is in derogation of common right, and should therefore be construed with reasonable strictness, and not extended by implication beyond its own terms or held to apply to such damages as are not within its clear intent." In the case last cited it is held that the stipulation in the city charter is not sufficiently specific, under the provision requiring 30 days' notice, to include injury to property.

The provision of the city charter relied on by appellee does not, we think, exempt the city from damages for a breach of a valid contract, but is limited, as the language implies, to damages to the person or property arising from a tort. We are not to be understood as holding that the city would be authorized by a provision in its charter to exempt itself from damages arising from the breach of its valid contract, as that question is not before us. The effect of such a provision is in derogation of common right, and, owing to the strictness with which such a provision is construed, the refusal of the courts to extend such a provision by implication to damages not within its clear intent, we hold that the charter provision relied on by appellee does not apply to the breach of its contract, and therefore is not available to the city as a defense for the breach of its contract.

Appellant challenges as error the action of the trial court in permitting the mayor and members of the city council to testify as to what was meant by the letter and telegram forwarded to the state comptroller, relative to the delivery by him of funding bonds to persons holding warrants in exchange therefor. Neither the letter nor the telegram is ambiguous, and, as they were before the court, oral testimony as to the meaning of such instruments was inadmissible. Neither was the testimony pertaining to the contract between appellant and the Brown-Crummer Company, of Dallas, admissible.

The assignments alleging other errors it is unnecessary to discuss, as they will not, we are confident, arise on another trial.

The judgment is reversed, and the cause remanded.