## CITY OF LUBBOCK v. GEO. L. SIMPSON & CO.

### No. 3359.

Court of Civil Appeals of Texas. Amarillo.
Feb. 19, 1930.

Rehearing Denied March 26, 1930.

Bean & Klett, of Lubbock, for appellant.

Rolt. A. Sowder, of Lubbock, for appellee.

JACKSON, J.

This suit was instituted by the plaintiff, Geo. L. Simpson & Co., in the district court of Lubbock county, against the defendant, the city of Lubbock, a municipal corporation, to recover $1,745 for an alleged breach of a contract made by the plaintiff with the defendant.

This is the second appeal of this case, and the former opinion of this court is reported in 17 S.W.(2d) 163, to which we refer for a statement thereof, and we will make such additional statements only as we consider necessary for a review of the questions presented on this appeal that were not disposed of in our former opinion.

In the first trial and on the former appeal, the city of Lubbock was appellee, but did not attack the validity of the contract made between the plaintiff and the defendant for the sale and purchase of the refunding bonds to be issued by the city.

In the last trial, the city amended its pleadings and, in addition to the defenses urged on the first trial, asserted both by demurrers to plaintiff's petition and allegations in its answer that the contract of sale for the refunding bonds was illegal, invalid, and void and against public policy, because: First, said contract was made before the refunding bonds mentioned therein were voted by the city of Lubbock; second, that the refunding bonds described in the contract and in plaintiff's petition were not first advertised for sale once each week for a period of thirty days prior to the sale thereof, as required by the

charter of the city of Lubbock, which provides that:

"No bond shall be sold until the sale has first been advertised in a newspaper once each week for a period of thirty days."

The city also pleaded that if the contract was binding, it, in good faith, undertook to in all things comply therewith. That if any of the warrants were not assembled or delivered in accordance with the contract, it was no fault of the city because it performed its duty to the extent of its ability to assemble and deliver all the outstanding warrants which the city could assemble. That if any of the outstanding warrants were exchanged by Myrick and Oldham, or either of them, for funding bonds, it was because they handled such warrants with the consent of plaintiff under an agreement with the plaintiff that for such of the warrants as were assembled by Oldham and Myrick, they were to receive $5 per $1,000 as a premium for such services. That the Brown-Crummer Company, acting for and through Oldham and Myrick, assembled warrants and made the exchange, for which services they received and were entitled to receive $5 per $1,000 under agreement with plaintiff. That if there was not an express agreement between the plaintiff, Brown-Crummer Company, and J. B. Oldham and W. A. Myrick, that nevertheless said parties performed the services of assembling said warrants with the knowledge and consent of plaintiff and that said services were accepted by the plaintiff, for which services said parties were entitled to the usual and customary fee of $5 per $1,000, which was a reasonable fee for such services. That it was advantageous to the plaintiff to have said warrants assembled in Dallas instead of the city of New York. That plaintiff consented to the assembling of said warrants in Dallas, and if there was any obligation on the part of the city to assemble said warrants in New York, or cause them to be assembled there by virtue of any provision of the contract, such provision was waived. That if the warrants were not assembled and paid for by the plaintiff at New York, Dallas, or the comptroller's office in Austin, it was no fault of the city, but due to the negligence of the plaintiff in not taking up and paying for the warrants that were called at the time they were redeemable on May 20, 1927, and June 1, 1927.

[By] supplemental petition, the plaintiff urged a general demurrer, special exceptions, and pleaded that the sale of the bonds was actually advertised in two newspapers before such sale, that bids were filed by several prospective customers for the purchase of said bonds, in response to such advertisement, and that said contract of sale was made with the plaintiff by the city, and notwithstanding said

contract was made before the bonds were voted, the city, under said contract, sold to the plaintiff several thousand dollars of said refunding bonds, received the consideration therefor and the benefits of such sale, by which the rate of interest on its indebtedness was reduced, that the plaintiff was out great expense by reason of the conduct of the city in accepting its bid, entering into such contract, and impliedly representing it could and would carry out said contract in a legal manner, by all of which contract, acts, and representations the defendant ratified said contract, and is estopped to plead such invalidity as a defense.

That the provision of the charter alleged by the defendant, forbidding the sale of any bonds until they have first been advertised in some newspaper thirty days, is not valid because such provision was never legally adopted, in that the ordinance proposing such amendment contained more than one subject and the title of said ordinance failed to state clearly the subject legislated upon.

The case was tried to a jury, but at the conclusion of the testimony the court peremptorily directed the jury to find for plaintiff in the sum of $1,745, with interest from January 1, 1928, at 6 per cent.

The jury returned a verdict as instructed, and the court rendered judgment that the plaintiff have and recover of and from the defendant the sum of $1,909.50, with interest from the date of the judgment at the rate of 6 per cent. per annum, from which judgment the city prosecutes this appeal.

The appellant, by proper assignment, contends that the contract for the sale of the refunding bonds to appellee was illegal and void because the sale was not first advertised in a newspaper once a week for thirty days before the contract was made. An amendment to the charter provides:

"No bond shall be sold until the sale has first been advertised in a newspaper once each week for a period of thirty days."

The contract between appellant and appellee for the sale of the bonds is dated April 5, 1927.

On March 17, 1927, a notice was issued by the city that bids would be received until 1:30 p. m., March 31, 1927, for the purchase and handling of a funding bond issue to be voted, aggregating approximately $760,000. The record shows that a copy of this notice was published in the "Lubbock Morning Avalanche" on March 18, 19, and 20th, and a copy of such notice was published in "The Bond Buyer" on March 19, 21, and 22, in the year 1927.

"All who contract with a municipal corporation are charged with notice of the extent of its powers and of the powers of its officers and agents with whom they contract.

If the contract is required to be let on competitive bids, and is so let, the contractor must see to it that all mandatory provisions of the controlling law have been followed. The contractor must see that all essential preliminaries have been observed in substance anterior to the advertisement for bids, that mandatory and jurisdictional requirements as to the contents of the advertisement or proposal, the publication of the advertisement, the opening of the bids, the awarding of the contract and the contents of the contract itself have been followed at least in essential particulars." 5 McQuillin (2d Ed.) § 2049.

"Contracts for public improvements and most municipal contracts for supplies, printing, etc., at least those involving the expenditure of a considerable sum, are required in nearly every municipality by statute or charter provisions to be let by competitive bidding. It is therefore necessary to consult always in the first instance the statutes in the particular jurisdiction and the charter provisions and it is always necessary to determine if there are any ordinances relating thereto, keeping in mind, however, that if the ordinances do not conform to the statute or charter, the latter governs. The person or company making a bid or entering into a contract with a municipality acts at his peril." 3 McQuillin (2d Ed.) § 1285.

"Municipal bonds are generally sold in a block to some bonding house and if there is no method of sale prescribed by law, the sale may be a private as distinguished from a public one. The method of sale prescribed by the statute or charter must be followed and if the law requires the bonds to be sold to the highest bidder after advertisement, a sale in any other manner is void." 6 McQuillin (2d Ed.) § 2462.

"Provisions relative to the duration of time or the number of times that advertisements for bids are to be published must be substantially observed. However, these provisions are generally liberally construed. Thus a requirement to publish an advertisement for fifteen days was held sufficiently complied with, although a Sunday or a holiday intervenes in which the paper was not published. So a charter provision requiring that notice shall be given by advertisement in a newspaper thirty days before the work is finally let does not require publication of the advertisement on each of the thirty days; nor does it require notice to be given thirty days before the bids are received. A statute requiring notice of proposals to be given for at least ten days by two publications in a newspaper requires ten days notice from the first publication. The requirement of publication for one week means a period of seven full days." 2 McQuillin (2d Ed.) § 1315.

In Ardrey et al. v. City of Dallas, 13 Tex. Civ. App. 442, 35 S. W. 726, it is held that in

order for a city to levy a special tax for street improvements, the city must have complied with all the conditions precedent prescribed by charter and a failure to advertise for bids for doing the work invalidates the tax.

In the case of Breath et al. v. City of Galveston, 92 Tex. 454, 49 S. W. 575, 576, the Supreme Court, in passing upon the sufficiency of a petition brought by the city to collect for street improvements from the abutting owners, sustained a general demurrer because the work for said improvements was not advertised as the charter of the city required, saying:

"In this character of proceeding, the purpose is to impose upon the owner and his property, without his actual participation or consent, a pecuniary obligation and lien. In other words, when certain steps prescribed by the charter have been taken, the law imposes the obligation and lien. Therefore, each step is an essential element of this imposed obligation and lien, and the absence of any one is as fatal as is the absence of any of the essential elements of an ordinary contract in a suit upon a private agreement. If the advertisement is one of the steps prescribed by the charter, no obligation or lien can exist, in the absence thereof, any more than there would be in the case of an ordinary agreement, in the absence of a consideration."

See, also, Texas Electric Co. v. City of Vernon (Tex. Civ. App.) 266 S. W. 600; Ashby v. James (Tex. Civ. App.) 226 S. W. 732; Headlee v. Fryer (Tex. Civ. App.) 208 S. W. 213; Kernagan v. Ft. Worth (Tex. Civ. App.) 194 S. W. 626.

■ The appellee contends that the amendment to the charter requiring advertising the sale of bonds for a period of thirty days before they are sold is void because the city commission, in passing the ordinance for the submission of the amendment to the city, included in said ordinance seven different amendments which were unrelated, incongruous, and incompatible.

It is true that the ordinance is subject to the objection made to its validity, but the record fails to show that the amendments as submitted to the people contained more than one subject and does not show that the ballot for such amendment did not permit voters to vote "yes" or "no" on each amendment without voting "yes" or "no" on all of said amendments. Article 1170, R. C. S.

It is therefore our opinion that as disclosed by this record, the amendment to the charter was valid.

■■ The testimony shows without controversy that the sale of the refunding bonds was not advertised as required by the charter, and it is our opinion that the advertisement of the sale in the "Lubbock Morning Avalanche"

on March 18, 19, and 20, and in "The Bond Buyer" on March 19, 21, and 22, is not a substantial compliance therewith. The advertisement gave notice that bids or proposals for the sale of the bonds would be received until 1:30 p. m., on March 31, 1927, and the first publication in either paper was on March 18, 1927, thirteen days before March 31st, and the contract for the sale of the bonds was entered into on April 5, 1927, eighteen days after the first advertisement appeared. It is true that this contract of sale was not to become binding until the bonds were voted at. the election called for May 3, 1927, the order for which was passed March 31, 1927, the time limit of receiving bids, but it is our opinion, under the authorities and the facts disclosed by this record, that the contract for the sale of the refunding bonds between appellant and appellee was illegal and void, as no attempt was ever made to comply with the charter requiring that the sale of the bonds be advertised once a week in a newspaper for thirty days before they were sold.

"Express statutory authority to issue bonds implies the power to issue them in the ordinary and usual manner; and a municipality may by virtue thereof sell the bonds and use the proceeds for the purposes intended, that being the mode most generally adopted in similar cases. When the statute prescribed the method of sale, such method is the only method that can be followed. Hence, if it is required that the bonds shall be sold to the highest bidder after advertisement, no other disposition of the bonds can be made." 2 Dillon on Municipal Corporations (5th Ed.) § 895.

"Where the charter or incorporating act requires the officers of the city to award contracts to the lowest bidder, a contract made in violation of its requirements is illegal; and in an action brought on such contract for the work, the city may plead its illegality in defense; and neither the municipality nor its subordinate officers can make a binding contract for such work except in compliance with the requirements of the law." 2 Dillon on Municipal Corporations (5th Ed.) § 801.

"The purpose of a statute requiring the letting of bids to the lowest bidder is to invite competition and to that end publicity of the intention to let the contract is of the essence of the proceeding. Hence, any statutory provisions requiring advertisement or specifying its nature are usually to be regarded as mandatory and a failure to comply with their requirements is sufficient to avoid the contract." 2 Dillon on Municipal Corporations (5th Ed.) § 809.

"Where a municipal contract is not entered into in the manner and form prescribed by statute or charter, the corporation is often sought to be held liable where the other contracting party has wholly or in part per-

formed his side of the contract and the municipality has accepted the benefits thereof without objection. The grounds for recovery relied on are either ratification, estoppel, or implied contract, and inasmuch as the three are often confused, the law applying where acceptance of benefits is urged as constituting the ratification, creating the estoppel, or authorizing a recovery on an implied contract, is practically the same without regard to where the court refers to it as one or the other. * . * *

"The general rule is that if a contract is within the corporate power of a municipality but the contract is entered into without observing certain mandatory legal requirements specifically regulating the mode in which it is to be exercised, there can be no recovery thereunder. If a statute or charter says that certain contracts must be let to the lowest bidder, or that they must be made by ordinance, or that they must be in writing, or the like, there is a reason therefor based on the idea of protecting the taxpayers, and inhabitants, and these provisions are mandatory, and while it is undoubtedly true that mere irregularities in making the contract are not fatal to a recovery, yet if the contract is entered into or executed in a different manner, the mere fact that the municipality has received the benefits of the contract which has been performed by the other party, does not make the municipality liable, either on the theory of ratifications, estoppel, or implied contract, in order to do justice to the other party by paying the reasonable value of the property or services. * * *

· "The prevailing rule undoubtedly is that if the powers of a municipality or its agents are subjected by statute or charter 'to restrictions as to the form and method of contracting that are limitations upon the power itself, the corporation cannot be held liable by either an express or an implied contract in defiance of such restrictions.' The theory on which these cases are decided is that if any substantial or practical results are to be achieved by the restrictions upon the powers of municipal officers or boards to incur liabilities, as contained in the statutes or charter, no recovery on an implied contract can be allowed, notwithstanding there may be apparent injustice in some cases in adhering strictly to statutes or charter provisions." 3 McQuillin (2d Ed.) § 1283.

"A contract which violates an express provision of the law cannot be ratified, e. g., one not awarded by competitive bidding, as required, or one that must be upon a consideration wholly to be performed after the making of the contract, and to be in writing. Such invalid contracts cannot be ratified after performance." 3 McQuillin (2d Ed.) § 1358.

In addition to the authorities above cited, see Noel v. City of San Antonio, 11 Tex. Civ. App. 580, 33 S. W. 263.; Mineralized Rubber Co. v. City of Cleburne, 22 Tex. Civ. App. 621, 56 S. W. 220; Clinton Construction Co. of Calif. v. Clay, 34 Cal. App. 625, 168 P. 588, 589; Roberts & Co. v. Taft et al. (C. C. A.) 109 F. 825.

The record presents no question of fraud, no question of innocent purchaser, and none relative to the validity of the refunding bonds issued by the city and sold under the contract, and in our opinion the city was not estopped to urge that the contract for the sale of the refunding bonds was illegal and void as a defense and the conduct of the city alleged by appellee and relied on as a ratification of such contract would not bind the city to the performance of a contract which in its origin was illegal and void.

The $1,745 sued for by appellee did not go into the treasury of the city, and the city received no benefit therefrom, neither did it receive either services or property for said sum.

The city could not have held the $7,500 deposited with it to insure the performance by appellee of the contract because such contract was illegal and void and could not have been enforced by the city and appellee could have recovered such deposit.

In our view of the case, the court should have directed a verdict for appellant, as requested. The judgment is reversed and here rendered that the appellee take nothing by its suit.